```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Ronald Brown, et al.,              :

      Plaintiffs,              :

  v.                                :      Case No. 2:13-cv-1225

Florida Coastal Partners, LLC,     :      Magistrate Judge Kemp
                                   :
      Defendants.

OPINION AND ORDER

    This case (in which the parties have consented to full disposition by the Magistrate Judge) is before the Court on two motions.  They are: (1) a motion to dismiss filed by defendant Carlisle, McNellie, Rinin, Kramer & Ulrich, Co., LPA ("Carlisle")(Doc. 37); and (2) a motion for "Rule 11 Violation and Injunction of State Foreclosure Case 08 CVE 12 1598" filed by plaintiffs Ronald Brown and Tonya Brown (collectively "the Browns"), who are proceeding <u>pro se</u> (Doc. 40).  For the reasons set forth below, the motion to dismiss will be granted in part and denied in part, and the motion for Rule 11 violation and injunction will be denied.

                      I.  <u>Background</u>

    The Browns are property owners who are parties to a foreclosure action filed in the Delaware County Court of Common Pleas as Case No. 08-CVE-12-1598.  A discussion of the procedural history of that foreclosure action is necessary to resolve the pending motions in this case.

    CitiGroup Global Markets Realty Corp. ("CitiGroup") filed the foreclosure case against the Browns in December, 2008.  On September 8, 2010, CitiGroup filed a motion to substitute Kondaur Capital Corporation ("Kondaur") as the plaintiff.  CitiGroup

attached an assignment of mortgage to the motion reflecting that CitiGroup had assigned the mortgage and note to Kondaur. Before the Court of Common Pleas ruled on the motion to substitute, it became aware that Mr. Brown had filed a petition in United States Bankruptcy Court. Consequently, pursuant to 11 U.S.C. §362, the Court of Common Pleas stayed the case on October 11, 2010. The Court of Common Pleas lifted the stay and returned the case to its active docket on July 5, 2011. Thereafter, on October 24, 2011, the Court of Common Pleas granted the motion to substitute. In doing so, the Court of Common Pleas noted that after the action was filed, "Plaintiff CitiGroup ... assigned the subject mortgage together with the note to Kondaur ...." Carlisle acted as counsel to both CitiGroup and Kondaur.

Kondaur and Florida Coastal Partners, LLC ("Florida Coastal") subsequently filed a joint motion to substitute party plaintiff and counsel. That motion, filed on August 20, 2013, reflected that the note and mortgage were transferred by Kondaur to Florida Coastal by assignment of mortgage dated December 11, 2011. The motion also sought to replace Carlisle and substitute Charles R. Griffith as the attorney for Florida Coastal. The Court of Common Pleas granted the joint motion to substitute party plaintiff and counsel on September 25, 2013.

On December 13, 2013, while the foreclosure action was still pending in the Court of Common Pleas, the Browns brought this action pursuant to this Court's federal question jurisdiction, alleging that Florida Coastal and John Doe, Individuals 1-50 violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq*. The Browns also alleged fraud in connection with the mortgage on their property and sought to quiet the title to the property. On January 3, 2014, the Browns filed an amended complaint adding Mr. Griffith as a defendant and adding, among other allegations, a claim for slander of title. Finally, on May

23, 2014, with leave of Court, the Browns filed a "3rd amended complaint" against Florida Coastal, Mr. Griffith, Carlisle, and John Doe, Individuals 1-50.  Count one of the 3rd amended complaint alleges that the defendants violated the FDCPA.  More specifically, the Browns allege that Carlisle falsely represented in the Common Pleas Court action that its clients were proper party plaintiffs (specifically, holders of the loan) when, in fact, they were debt collectors.  The Browns allege that Carlisle's false and misleading representations resulted in judgments and sanctions against them in the foreclosure action. Similarly, the Browns allege that Mr. Griffith falsely represented that Florida Coastal was a proper party plaintiff in that case when, in fact, it was also a debt collector.  The Browns further allege that Florida Coastal and Mr. Griffith misrepresented the character, amount, and legal status of the mortgage and note in violation of the FDCPA.  The Browns also set forth state law claims for foreclosure fraud (count two), slander of title (count three), slander of credit (count four), emotional distress (count five), and quiet title (count six).

One day after they filed the complaint in this case, the Browns removed the state court foreclosure action from the Delaware County Court of Common Pleas.  It became Case No. 2:13-cv-1232.  On September 24, 2014, Judge Economus of this Court issued an Opinion and Order adopting a Report and Recommendation which determined that the Court lacked subject matter jurisdiction over the dispute, and he remanded the case to the Delaware County Court of Common Pleas.  The Browns have moved to reconsider that order.  To date, it does not appear that a final judgment has been entered in the foreclosure action.

## II. Discussion

The Court will first address Carlisle's motion to dismiss. After doing so, the Court will address the Browns' motion for

3

rule 11 violation and injunction.

### A. Carlisle's Motion to Dismiss

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue in a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).

When analyzing a claim under a 12(b)(6) motion to dismiss, a court must take all well-pleaded factual allegations as true and construe those allegations most favorably toward the non-movant. Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). Federal Rule of Civil Procedure 8(a) admonishes a court to look only for a "short and plain statement of the claim showing that the pleader is entitled to relief," rather than requiring the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89, 93 (2007). Rule 12(b)(6) must be read in conjunction with Rule 8(a). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. 5A Wright & Miller, Federal Practice and Procedure §1356 (1990).

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

4

When a court considers a 12(b)(6) motion to dismiss, it "may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 665 (2009). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. To survive a motion to dismiss, a plaintiff's claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Finally, pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), "and should therefore be liberally construed." Williams v. Curtain, 631 F.3d 380, 383 (6th Cir. 2011).

In its motion to dismiss, Carlisle argues that the Browns' wrongful/fraudulent disclosure claim, FDCPA claim, fraud claim, slander of title claim, and slander of credit claim should be dismissed because the facts relevant to those claims have been "conclusively decided" against the Browns in the state foreclosure action. More specifically, Carlisle argues that, in the foreclosure action, the state court conclusively determined that:

- Carlisle brought the foreclosure action in the name of a proper plaintiff, which held the note and the mortgage and had standing to bring the complaint;

- the mortgage assignments were proper;

- Carlisle filed proper motions to substitute plaintiff as the mortgage became assigned;

- conditions of the mortgage were broken by the

5

    Browns by reason of default in payment;

- the amount due under the note and mortgage as set forth in the foreclosure complaint was correct;

- there were no misrepresentations of material fact involved in prosecuting the foreclosure action;

- there were no misrepresentations made to the Browns either orally or in writing; and

- Carlisle did not file any false or misleading affidavits.

See Doc. 37. Carlisle makes a limited number of additional arguments in its motion to dismiss, arguing that:

- a claim for wrongful/fraudulent foreclosure is not a cause of action in Ohio;

- the Browns do not allege any facts in support of their fraud claim and their intentional infliction of emotional distress claim;

- the slander of title claim fails because the Browns lack standing to challenge the validity of the mortgage assignments because they are not parties to those assignments;

- the Browns do not plead that Carlisle is asserting any right to the property as required to state a quiet title claim.

Id. For these reasons, Carlisle urges the Court to grant its motion to dismiss.

  In opposition, the Browns argue that Carlisle did not represent a proper party or have the required documents to file a foreclosure proceeding against them in state court. The Browns allege that Carlisle's clients were servicers of the loan or debt collectors and, consequently, Carlisle misrepresented that its clients were able to pursue the foreclosure proceeding against them in state court. The Browns also allege that Carlisle's misrepresentations have caused them to suffer emotional distress.

Finally, the Browns assert that no "final decision" has been entered in the state court foreclosure case.  See Doc. 38.

In its reply brief, Carlisle argues that the Browns are attempting to attack collaterally the state court's decision to award a foreclosure judgment against them.  Carlisle acknowledges that the foreclosure judgment did not resolve the Browns' counterclaims, but it maintains that "the issues of fact alleged by Plaintiffs in their complaint have already been adjudicated to Plaintiffs' detriment in the State Foreclosure Action."  In summary, Carlisle argues that "the allegations plead by Plaintiff when considered along with Plaintiffs [sic] own exhibits and the res judicata determinations made by the Delaware County Ohio Common Pleas Court demonstrate that Plaintiffs' claims have no facial plausibility that Defendant is liable for he [sic] misconduct alleged."  See Doc. 39.

1. Res Judicata

The Court first examines Carlisle's argument that the Browns' claims for wrongful/fraudulent disclosure, FDCPA violation, fraud, slander of title, and slander of credit are barred by the doctrine of res judicata because they have been "conclusively decided" in the state foreclosure action.  When a plaintiff attempts to litigate, in a new civil action, claims which have once been dismissed by a court of competent jurisdiction, res judicata principles apply.  Two separate doctrines are encompassed in the concept of res judicata.  The doctrine of claim preclusion prevents a litigant from raising a new claim in a subsequent action if it arises out of the same facts as a prior case and the claim could have been, but was not, raised in that prior case.  The doctrine of issue preclusion, sometimes referred to as collateral estoppel, applies when the party attempts to litigate again claims which were actually decided against the party in a prior case.  Because Carlisle

argues that the Browns are raising claims here which were decided against them in the Court of Common Pleas case, the Court will examine the issue preclusion prong of the res judicata doctrine.

For issue preclusion to apply, the party claiming preclusion must demonstrate:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Kosinski v. Commissioner of Internal Revenue, 541 F.3d 671, 675 (6th Cir. 2008), quoting United States v. Cinemark USA, Inc., 348 F.3d 569, 583 (6th Cir. 2003).  Here, the Browns contend that the state court proceeding did not result in a final judgment on the merits.  This Court agrees.  As noted above, the state court case was removed to this Court, only to later be remanded for lack of subject matter jurisdiction.  Consequently, the case is presently pending in the Delaware County Court of Common Pleas.  Because "[o]nly final judgments . . . possess issue-preclusive power, Kosinski, 541 F.3d at 676, Carlisle is incorrect when it asserts that the issues raised by the Browns have been conclusively decided in the state court case.  To the extent that Carlisle's motion to dismiss is based on principles of res judicata, it will be denied.

## 2. Fraud

In its motion to dismiss, Carlisle argues that a claim for wrongful/fraudulent foreclosure is not recognized in Ohio.  Carlisle appears to be referring to the second cause of action in the 3rd amended complaint, which the Browns refer to as "foreclosure fraud."  In that cause of action, the Browns allege that the clients which Carlisle represented in the state court

8

foreclosure action were, contrary to Carlisle's statements to that court, "debt collectors and not owners of the mortgage and note." Doc. 32, ¶45. The Browns also allege that Carlisle

> fraudulently executed a back-dated assignment of Plaintiffs [sic] mortgage and note in November, 2008 to make it appear that the assignment was executed by its client . . . at a time when the Plaintiffs [sic] mortgage was not in default and to conceal that its client was a debt collector and not owner of the plaintiffs' mortgage and note.... Upon recordation [sic] of this back-dated assignment, on December 1, 2008, [Carlisle] filed for foreclosure against the Plaintiffs on behalf of its client the next day December 2, 2008. As a result, the filing of the foreclosure action by Defendant [Carlisle] against the Plaintiffs in December, 2008 constitutes foreclosure fraud.

Doc. 32, ¶46. The Browns allege that, as a result of the fraudulent assignment of the mortgage, "there is not a clear chain of title leading to ownership of Plaintiffs' mortgage and note by the Defendant Florida Coastal." On this basis, the Browns allege that the foreclosure action initiated by Carlisle and continued by Griffith Law on behalf of its client Florida Coastal constitutes fraud.

Even assuming that Carlisle is correct in arguing that wrongful foreclosure is not an independent cause of action under Ohio law, if the complaint is construed liberally, it appears that the Browns are asserting a claim of fraud rather than "wrongful foreclosure." The Browns' fraud claim is based upon two specific allegations – that Carlisle fraudulently back-dated an assignment of the mortgage and note, and that it fraudulently brought the foreclosure action on behalf of debt collectors.

"In alleging fraud ..., a party must state with particularity, the circumstances constituting fraud...." Fed. R. Civ. P. 9(b). To satisfy this requirement, a plaintiff generally must describe the time, place, and content of the purported fraud and identity of the parties who participated in it. <u>See Sky</u>

9

Techn. Partners, LLC v. Midwest Research Inst., 125 F. Supp. 2d 286, 299 (S.D. Ohio 2000). According to Carlisle, the Browns failed to plead any facts in support of their fraud claim, and they maintain an "erroneous belief that a foreclosure plaintiff needs to be the owner of the subject note and mortgage to be a proper party plaintiff." Carlisle further argues that because Ohio law allows a foreclosure action to be brought by the holder of the note or mortgage, the Browns' fraud claim must be dismissed.

As noted above, however, the Browns complaint includes specific allegations about the time, place, manner, and content of the false statements they claim were made by Carlisle. Those allegations are sufficient to satisfy Rule 9(b)'s requirements. Further, although Carlisle correctly states that, under Ohio law, "the current holder of the note and mortgage is entitled to bring a foreclosure action against a defaulting mortgagor even if the current holder is not the owner of the note and mortgage," Wood v. Lerner Sampson & Rothfuss, 2014 WL 4249785, at *7 (N.D. Ohio Aug. 27, 2014), quoting ABN AMRO Mortg. Grp., Inc. v. Evans, 2013 WL 1696728, at *5 (Ohio Ct. App. Apr. 18, 2013), the Browns neither allege nor concede that Carlisle's clients were holders of the note and mortgage when they filed or continued the state foreclosure case. Perhaps Carlisle can establish that its clients had an interest in the mortgage or the note sufficient to pursue the foreclosure action in the Delaware County Court of Common Pleas, but the facts which would support that finding are not properly before the Court in the context of a Rule 12(b)(6) motion, which is an attack on the sufficiency of the complaint. Further, for the reasons set forth above, this Court cannot, as Carlisle urges, rely on the state court's determination that the Carlisle brought the lawsuit on behalf of proper parties. For these reasons, Carlisle's motion to dismiss the Browns' fraud claim will be denied.

3. <u>Infliction of Emotional Distress</u>

Under Ohio law, there are two torts based on emotional distress: intentional infliction of emotional distress and negligent infliction of emotional distress. <u>Dicks v. Capital Cities/ABC, Inc.</u>, 933 F. Supp. 694, 696-67 (S.D. Ohio 1996). The Browns' complaint alleges "emotional distress," but it does not identify the particular tort they rely on in seeking relief. In its motion to dismiss, Carlisle construes the Browns' "emotional distress" claim as an intentional infliction of emotional distress claim. In their opposition to Carlisle's motion, the Browns do not oppose this construction. Consequently, the Court will also construe the Browns' "emotional distress" claim as attempting to plead a claim for the intentional infliction of emotional distress.

In order to state a claim for intentional infliction of distress under Ohio law, the plaintiff must plead that:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

<u>Talley v. Family Dollar Stores of Ohio, Inc.</u>, 542 F.3d 1099, 1110 (6th Cir. 2008). In the 3rd amended complaint, the Browns state only that "[t]he Defendants [sic] ongoing and continuous unfair, misleading and deceptive practices debt collection practices [sic] have cause [sic] plaintiffs' emotional distress." Doc. 32, ¶53. These conclusory allegations are plainly insufficient.

The Browns attempt elaborate on their "emotional distress claim" in their opposition to the motion to dismiss, arguing that they:

> have endured nearly 7 years of emotional distress at the hands of Carlisle who in September, 2013 continued to make misrepresentations in State Court that the proper party was before the Court. The Plaintiffs live with the emotional distress on a daily basis knowing that an adverse final judgment could occur against them at any time as a result of the Carlisle's [sic] false or misleading statements or representations, engagement in unfair practices, and furnishing certain deceptive forms in relation to the foreclosure action they brought against the Plaintiffs and ongoing since December, 2008.

See Doc. 38, at 5. But even if the 3rd amended complaint can be construed to include these additional allegations, the Browns do not allege that Carlisle's conduct was extreme and beyond all possible bounds of decency such that it can be considered as utterly intolerable in a civilized community, nor have they pleaded or identified facts that would plausibly support that conclusion. Although the Browns undoubtedly were concerned that they would suffer an adverse final judgment, such concerns alone cannot form the basis of an intentional infliction of emotional distress claim. See, e.g., Akar v. Federal Nat. Mortg. Ass'n, 843 F. Supp. 2d 154, 170 n.11 (D. Mass 2012) (noting that an intent to foreclose on property at a time when the bank had not yet become the holder of the subject mortgage is not conduct that was "beyond all bounds of decency and ... utterly intolerable in a civilized community"). The Browns likewise do not allege that their emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. As a result, the 3rd amended complaint fails to state a claim for intentional infliction of emotional distress which is plausible on its face. Accordingly, Carlisle's motion to dismiss the Browns' intentional infliction of emotional distress claim will be granted.

### 4. Slander of Title

Carlisle next argues that the Browns' slander of title claim must be dismissed because the Browns lack standing to challenge

the validity of the mortgage assignments because they are not parties to those assignments. A recent decision from the Court of Appeals, which Carlisle did not have the benefit of when it filed its brief, forecloses this argument.

In <u>Slorp v. Lerner, Sampson & Rothfuss</u>, __ F.3d __, 2014 WL 4800100, at *4 (6th Cir. Sept. 29, 2014), the Court of Appeals clarified the circumstances under which a mortgagor can challenge the validity of an assignment which purports to assign the mortgagee's interest in the mortgage to another entity. The Court noted that some confusion in this area might have been introduced into the case law by the unpublished decision in <u>Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC</u>, 399 Fed. Appx. 97, 102 (6th Cir. 2010), where the Court of Appeals stated that a homeowner did not have standing to challenge the validity of a home-loan assignment in an action contesting the foreclosure. In <u>Slorp</u>, consistent with cases subsequent to <u>Livonia Properties</u>, the Court of Appeals limited the scope of that rule, clarifying "that a non-party homeowner may challenge the validity of an assignment to establish the assignee's lack of title, among other defects." <u>Slorp</u>, <u>supra</u>. Stated differently, the Court of Appeals determined that "a non-party homeowner may challenge a putative assignment's validity on the basis that it was not effective to pass legal title to putative assignee." <u>Id</u>.

The Court of Appeals noted that there was no dispute in <u>Livonia Properties</u> that the assignor had assigned the title to the assignee. Instead, the issue in that case was whether the homeowner had standing to argue that "the assignment was not properly recorded and suffered from technical defects that prevented the assignee from establishing record chain of title" under the relevant law. In contrast, the issue in <u>Slorp</u> was whether the homeowner could challenge the assignment based on his

13

allegations that the assignment was fraudulent and the assignee thus did not hold the title at the time of the foreclosure. Consequently, the challenge in Livonia Properties was based upon a technical defect in an otherwise valid assignment, whereas the challenge in Slorp was based upon the validity of the assignment. This distinction led the Court of Appeals to find that the homeowner lacked standing in Livonia Properties, but the homeowner indeed had standing in Slorp.

In this case, the Browns are challenging the validity of the assignments and are not arguing that there are technical defects in otherwise valid assignments. Accordingly, the Browns have standing to challenge the validity of the assignments. For this reason, the Court finds Carlisle's argument that the Browns lack standing to be without merit.

### 5. Quiet Title

Finally, Carlisle argues that the Browns fail to plead the requisite facts to support a quiet title claim against Carlisle. Ohio Revised Code §5303.01 allows an action to be brought by a person in possession of real property "against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." Carlisle argues that because it is not asserting any right to the property, the Browns' claim must be dismissed. This Court agrees. The 3rd amended complaint alleges that Carlisle brought and pursued the foreclosure action on behalf of its clients, but it does not allege that Carlisle itself claimed an interest in the property. On this basis, Carlisle's motion to dismiss the Browns' quiet title claim will be granted.

### B. The Browns' Motion for Rule 11 Violation and Injunction

The Court now turns to the Browns' motion for Rule 11 violation and injunction of state foreclosure case 08-CVE-12-1598. (Doc. 40). In this motion, the Browns assert that the

following statement, made by Carlisle in its motion to dismiss, is sanctionable under Fed. R. Civ. P. 11:

> The State Court Foreclosure action filed by Carlisle against Brown was brought by the proper party plaintiff and was not fraudulent.

(Doc. 40 at 2). According to the Browns, Carlisle continually misrepresented to the state court that "its client Citi was a holder of the Plaintiffs [sic] note and proper party." Id. at 4 (internal quotations omitted). The Browns argue that "[t]he foreclosure complaint and subsequent pleadings filed by Carlisle in State Court, and their Motion to Dismiss and subsequent pleadings in this Court, were intentionally and deliberately filed to mislead, misrepresent and deceive State Court, this Court and the Plaintiffs regarding Carlisle's client Citi [sic] standing to foreclose against the Plaintiffs." Id. The Browns further allege that they "just became aware in December, 2013 of the applicability of specific aspects [sic] FDCPA in regards to the State foreclosure complaint pending against them and therefore equitable tolling should apply." Id. Finally, the Browns "respectfully request that this Court find in favor of their Motion for Federal Rule 11 violation against Carlisle and grant an Injunction against the foreclosure action...." Id.

Carlisle opposes the Browns' motion and argues that the statement at issue (that "the State Court Foreclosure Action ... against the Browns was brought by the proper party Plaintiff and was not fraudulent") "has already been determined by the State Court not to be a Rule 11 violation, the adjudication of which now precludes the Browns from raising that related claimed Rule 11 violation in this Court." (Doc. 41 at 4).

Here, the Browns have neither alleged nor shown that they have complied with the "safe harbor" provisions of Fed. R. Civ. P. 11(c)(2) by serving their request for sanctions on Carlisle 21

15

days before presenting it to the Court. Consequently, the Court cannot award sanctions on the basis of the present motion. See Ridder v. Springfield, 109 F.3d 288, 297 (6th Cir. 1997). In addition, the Browns do not provide any legal basis for the issuance of an injunction staying the foreclosure case. The federal Anti-Injunction Act, 28 U.S.C. §2283, states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The FDCPA does not appear to authorize such injunctions. See, e.g., Piper v. Portnoff Law Associates, 262 F.Supp.2d 520, 529 (E.D. Pa. 2003)("the FDCPA does not expressly authorize enjoining state court proceedings"). Nor is an injunction against the continuation of the foreclosure case necessary in order for this Court to exercise jurisdiction over the FDCPA claims or to effectuate its judgments, since none have yet been rendered. Accordingly, the Browns' motion for Rule 11 violation and injunction will be denied. (Doc. 40).

## IV. Conclusion

For the reasons set forth above, Carlisle's motion to dismiss (Doc. 37) is granted in part and denied in part. The Browns' claims against Carlisle for the intentional infliction of emotional distress and to quiet title are dismissed. The remainder of the motion to dismiss is denied. Further, the Browns' motion for Rule 11 violation and injunction (Doc. 40) is denied.

/s/ Terence P. Kemp
United States Magistrate Judge