```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Ronald Brown, et al.,            :

        Plaintiffs,              :

     v.                          :      Case No. 2:13-cv-1225

Florida Coastal Partners, LLC,   :      Magistrate Judge Kemp
                                 :
        Defendants.
```

OPINION AND ORDER

This case (in which the parties have consented to full disposition by the Magistrate Judge) is before the Court on a "notice of bankruptcy and suggestion stay [sic]" filed by defendant attorney Charles R. Griffith on his own behalf and on behalf of his client Florida Coastal Partners, LLC, relating to a bankruptcy filing made by plaintiff Tonya Brown. (Doc. 57). Also before the Court is a motion for summary judgment filed by defendant Carlisle, McNellie, Rini, Kramer & Ulrich, Co., LPA ("Carlisle") (Doc. 54), the plaintiffs' motion for leave to file an amended complaint and injunction or motion to stay (Doc. 60), and their amended motion for leave to file an amended complaint and injunction or motion to stay. (Doc. 61). For the reasons set forth below, the Court will find that Ms. Brown is no longer the real party in interest with respect to her claims in light of her pending bankruptcy. Thus, the Court will consider the pending motions only as they apply to Mr. Brown. The Court will grant Carlisle's summary judgment as to the claims brought by Mr. Brown only. Further, the Court will deny the motion for leave to file an amended complaint and injunction or motion to stay as moot. (Doc. 60). Finally, the Court also will deny Mr. Brown's amended motion for leave to file an amended complaint and

injunction or motion to stay.  (Doc. 61).

## I. Background

The Browns are property owners who are parties to a foreclosure action filed in the Delaware County Court of Common Pleas as Case No. 08-CVE-12-1598.  A discussion of the procedural history of that foreclosure action is necessary to address the notice of bankruptcy and suggestion of stay and the pending motions.

CitiGroup Global Markets Realty Corp. ("CitiGroup") filed the foreclosure case against the Browns in December, 2008.  On September 8, 2010, CitiGroup filed a motion to substitute Kondaur Capital Corporation ("Kondaur") as the plaintiff.  CitiGroup attached an assignment of mortgage to the motion reflecting that CitiGroup had assigned the mortgage and note to Kondaur.  Before the Court of Common Pleas ruled on the motion to substitute, it became aware that Mr. Brown had filed a petition in United States Bankruptcy Court.  Consequently, pursuant to 11 U.S.C. §362, the Court of Common Pleas stayed the case on October 11, 2010.  The Court of Common Pleas lifted the stay and returned the case to its active docket on July 5, 2011.  Thereafter, on October 24, 2011, the Court of Common Pleas granted the motion to substitute. In doing so, the Court of Common Pleas noted that, after the action was filed, "Plaintiff CitiGroup ... assigned the subject mortgage together with the note to Kondaur ...."  Carlisle acted as counsel to both CitiGroup and Kondaur.

Kondaur and Florida Coastal Partners, LLC ("Florida Coastal") subsequently filed a joint motion to substitute party plaintiff and counsel.  That motion, filed on August 20, 2013, reflected that the note and mortgage were transferred by Kondaur to Florida Coastal by assignment of mortgage dated December 11, 2011.  The motion also sought to replace Carlisle and substitute Charles R. Griffith as the attorney for Florida Coastal.  The

Court of Common Pleas granted the joint motion to substitute party plaintiff and counsel on September 25, 2013.

On December 13, 2013, while the foreclosure action was still pending in the Court of Common Pleas, the Browns brought this action pursuant to this Court's federal question jurisdiction, alleging that Florida Coastal and John Doe, Individuals 1-50 violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq*.  The Browns also alleged fraud in connection with the mortgage on their property and sought to quiet the title to the property.  On January 3, 2014, the Browns filed an amended complaint adding Mr. Griffith as a defendant and adding, among other allegations, a claim for slander of title. Finally, on May 23, 2014, with leave of Court, the Browns filed a "3rd amended complaint" against Florida Coastal, Mr. Griffith, Carlisle, and John Doe, Individuals 1-50.

Count one of the 3rd amended complaint alleges that the defendants violated the FDCPA.  More specifically, the Browns allege that Carlisle falsely represented in the Common Pleas Court action that its clients were proper party plaintiffs (specifically, holders of the loan) when, in fact, they were debt collectors.  The Browns allege that Carlisle's false and misleading representations resulted in judgments and sanctions against them in the foreclosure action.  Similarly, the Browns allege that Mr. Griffith falsely represented that Florida Coastal was a proper party plaintiff in that case when, in fact, it was also a debt collector.  The Browns further allege that Florida Coastal and Mr. Griffith misrepresented the character, amount, and legal status of the mortgage and note in violation of the FDCPA.  The Browns also set forth state law claims for foreclosure fraud (count two), slander of title (count three), slander of credit (count four), emotional distress (count five), and quiet title (count six).  On October 10, 2014, the Court

3

granted in part a motion to dismiss by Carlisle, dismissing the Browns' claims against Carlisle for the intentional infliction of emotional distress and to quiet title.  (Doc. 46).

One day after they filed the complaint in this case, the Browns removed the state court foreclosure action from the Delaware County Court of Common Pleas.  It became Case No. 2:13-cv-1232.  On September 24, 2014, Judge Economus of this Court issued an Opinion and Order adopting a Report and Recommendation which determined that the Court lacked subject matter jurisdiction over the dispute, and he remanded the case to the Delaware County Court of Common Pleas.  The Delaware County Court of Common Pleas entered a judgment of foreclosure on November 12, 2014 and a judgment confirming the sale and distribution of sale proceeds on February 11, 2015.  In the final entry of confirmation and order for distribution, the Court of Common Pleas indicated that property was sold at Sheriff's sale for $240,000 to Florida Coastal, which then assigned its bid to Triton Investments, LLC.  On February 13, 2015, the Browns filed an appeal and an emergency motion seeking a stay of the foreclosure and a writ of possession.

On February 20, 2015, Tonya Brown filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio, Case No. 2:15-bk-50925.  On February 27, 2015, Florida Coastal filed a notice of bankruptcy and suggestion of stay.  The Ohio Court of Appeals for the Fifth Appellate District issued a judgment entry on March 13, 2015, staying the appeal in light of the pending bankruptcy.  The Court of Appeals closed the action and stated that the parties may take action to reinstate the appeal after settlement of the bankruptcy or in the event that the bankruptcy court lifts the automatic stay.  On May 7, 2015, the bankruptcy court granted relief from the automatic stay with respect to Triton Investments, LLC, its

successors, and assigns – the purchaser of the property – limiting the relief to the "in rem action against the real property located at 6374 Hermitage Dr., Westerville, Ohio 43082."

The Browns appealed the bankruptcy court's decision lifting the stay with respect to Triton Investments LLC, and they moved to stay the appeal of the Court of Common Pleas case pending decision on the appeal of the bankruptcy court's order lifting the stay. The Court of Common Pleas granted the motion for a stay of execution of judgment pending appeal, subject to the posting of a supersedeas bond. On June 9, 2015, the Browns filed a notice urging that they were not required to post bond due to the pending bankruptcy.

In this case, also on February 27, 2015, Mr. Griffith and Florida Coastal filed a notice of bankruptcy and suggestion of stay. (Doc. 57). In examining that bankruptcy, the Court notes that the Office of the United States Trustee ("UST") moved the bankruptcy court for an order dismissing the Chapter 11 case. In its motion, the UST stated:

> While this case is relatively new, the UST is concerned that the case was filed solely as a stop-gap maneuver, relative to a recent confirmed Sheriff's Sale of the Debtor's real property. Considering the history reflected in Debtor's Non-Filing Spouse's cases, the allegations in the Motion for Relief from Stay, and the Debtor's failure to appear for the Meeting of Creditors, the UST believes that the Debtor lacks a good faith intention of fulfilling the obligations commensurate with bankruptcy protection. The Debtor's behavior thus far, though admittedly limited to just over one month, demonstrates behavior that is prejudicial to her creditors. The Debtor cannot be permitted to enjoy the benefits of bankruptcy protection without complying with the requirements of the Bankruptcy laws or the UST Guidelines.

(Bankr. Doc. 47 at 5). Based on the contention that Ms. Brown refused to "play by the rules," the UST asked that the case be dismissed or, alternatively, converted to Chapter 7. Id. The

5

bankruptcy court found the motion to be well taken and ruled that conversion to Chapter 7 was appropriate. Thus, Ms. Brown's bankruptcy is now a Chapter 7 bankruptcy.

In this Opinion and Order, the Court will first examine the impact of Ms. Brown's bankruptcy on this litigation. After doing so, the Court will examine Mr. Brown's motions, namely the motion for leave to file an amended complaint and injunction or stay filed on May 14, 2015 (Doc. 60), and the amended motion for leave to file an amended complaint and injunction or motion to stay filed on May 15, 2015 (Doc. 61). Finally, the Court will consider the motion for summary judgment filed by Carlisle on January 1, 2015. (Doc. 54).

II. Impact of Pending Bankruptcy

Once a debtor files a petition in bankruptcy, only the bankruptcy trustee has standing to pursue the debtor's pre-petition causes of action. Tyler v. Capital Mgmt., Inc., 736 F.3d 455, 461 (6th Cir. 2013), citing Stevenson v. J.C. Bradford & Co. (In re Cannon), 277 F.3d 838, 853 (6th Cir. 2002). That is, the trustee, and not the debtor, has standing to pursue existing claims after the debtor files for bankruptcy protection because such claims are considered to be "property of the estate" under 11 U.S.C. §541(a)(1). See, e.g., In re Bernstein, 525 B.R. 505, 508 (N.D. Ga. 2015)("a Chapter 7 debtor lacks standing to litigate pre-petition claims and is not the real party in interest in whose name such claims may be brought unless and until such claims are abandoned by the trustee back to the debtor"). As the Court of Appeals has observed, "[t]he Bankruptcy Code itself provides that the bankruptcy estate comprises 'all legal or equitable interests of the debtor in property as of the commencement of the case,' 11 U.S.C. §541(a)(1), and it is well established that the 'interests of the debtor in property' include 'causes of action.'" Bauer v.

6

Commerce Union Bank, Clarksville, Tenn., 859 F.2d 438, 440-41 (6th Cir. 1988).  Further, this Court may raise the issue of standing sua sponte.  See Coston v. Petro, 398 F. Supp. 2d 878, 882 (S.D. Ohio 2005).

There is no question that Ms. Brown is a Chapter 7 debtor.  In light of the pending bankruptcy, Ms. Brown lacks standing to pursue her pre-petition claims in this Court because those claims are now considered to be "property of the estate."  Because the Chapter 7 trustee is the real party in interest to Ms. Brown's claims, the Court will analyze the pending motions only to the extent that they pertain to Mr. Brown.

### III. Mr. Brown's Motions

On May 14, 2015, Mr. Brown filed a motion for leave to file an amended complaint and injunction or stay.  (Doc. 60).  The following day, on May 15, 2015, Mr. Brown filed an amended motion for leave to file an amended complaint and injunction or motion to stay.  (Doc. 61).  The latter motion is identical to the one filed the previous day, except that the attached proposed fourth amended complaint differs in some respects.  It is apparent that Mr. Brown intended for the amended motion (Doc. 61) to replace the original motion (Doc. 60).  Consequently, the Court will deny the original motion as moot.  (Doc. 60).

The Court now turns to the amended motion for leave to file an amended complaint and injunction or motion to stay.  (Doc. 61).  In the amended motion, Mr. Brown seeks leave to file a fourth amended complaint "to add violations of Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. 1962 et seq., 1964 ('RICO') and new Defendants...."  Id. at 2.  Mr. Brown claims that he has new evidence that the property which was subject to foreclosure has been used in a scheme of racketeering.  More specifically, Mr. Brown states that he learned that Alexius Dorsey is to become recipient of the real property, and that Mr.

7

Dorsey filed a false affidavit in state court concerning his interaction with and knowledge of the mortgage and note.  In the proposed fourth amended complaint, Mr. Brown seeks to add the following defendants:  The Windsor Companies, Triton Investments, LLC, Alex Dorsey, and Luke Farrell.  In addition, Mr. Brown seeks to introduce new facts and to assert the following causes of action:  FDCPA (count one), fraud (count two), a "violation of federal rule 62" rendering the "state court action void" (count three), "removal of state court action" rendering the state court "proceedings void" (count four), RICO violations (count five), slander of title (count six), and slander of credit (count seven).

Carlisle filed a response to the motion, arguing that Mr. Brown's motion should be denied.  (Doc. 62).  More specifically, Carlisle argues that it will suffer prejudice if the motion is granted "as it will unduly delay the already pending Motion for Summary Judgment...." Id. at 2.  Carlisle also argues that the futility of "[the] proposed amendment is apparent on its face and the proposed amendment fails to cure the deficiencies contained in Browns' previous pleadings." Id. at 3.

Mr. Griffith and Florida Coastal also filed a memorandum in opposition to Mr. Brown's motion, together with The Windsor Companies, Triton Investments, LLC, Alex Dorsey, and Luke Farrell.  (Doc. 64).  In a typical case, non-parties such as The Windsor Companies, Triton Investments, LLC, Alex Dorsey, and Luke Farrell would not, without leave of Court, be permitted to appear and oppose a motion for leave to amend. See, e.g., Custom Pak Brokerage., LLC v. Dandrea Produce, Inc., 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014)("Proposed defendants do not have standing to oppose a motion to amend because they are not yet named parties")(internal quotations and citation omitted).  Thus, this Court will consider the memorandum in opposition only insofar as

8

it was filed by defendants Mr. Griffith and Florida Coastal.

In their memorandum in opposition, Mr. Griffith and Florida Coastal argue that Mr. Brown's motion should be denied because it is "just another attempt to try and delay the foreclosure process that has been ongoing." Id. at 2. Mr. Griffith and Florida Coastal provide this Court with a history of the relevant cases in an effort to demonstrate that Mr. Brown has repeatedly tried to get the foreclosure action stayed or removed. Mr. Griffith and Florida Coastal further argue that Mr. Brown's motion should be denied because it seeks to re-litigate matters resolved against Mr. Brown in other courts and to add "new parties that have no relation to the original action." Id. at 4. To add the new defendants at this stage, Mr. Griffith and Florida Coastal argue, "would unduly prejudice and delay this proceeding." Id. at 5. Mr. Griffith and Florida Coastal further assert that there is no basis for the requested injunctive relief.

As set forth previously by this Court, generally, motions to amend pleadings are governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that after the time for amending as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The higher standard set forth in Rule 16(b) for modifying a scheduling order only applies when a court has issued a scheduling order setting a deadline for motions to amend the pleadings. Fed. R. Civ. P. 16(b). The Court has not entered a scheduling order in this case. Accordingly, the liberal standard set forth in Rule 15(a) applies here.

Under this standard, motions for leave to amend may be denied "where the court finds 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" Marquette Gen. Hosp. v. Excalibur Med. Imaging, LLC, 528 F. App'x 446, 448 (6th Cir. 2013), quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962). In considering what constitutes "undue delay" and "undue prejudice," the Court of Appeals has considered factors including the length of the delay, whether dispositive motions have been granted, whether the new allegations would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, and whether the new allegations would significantly delay resolution of the dispute. See, e.g., Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994) ("In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction"). "The longer the delay, the less prejudice the opposing party will be required to show." Dubuc v. Green Oak Tp., 312 F.3d 736, 752 (6th Cir. 2002) (citation omitted). On the other hand, "[i]n the absence of reasons such as those listed above, leave should generally be granted." Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 502 F. App'x 523, 541 (6th Cir. 2012), citing Foman, 371 U.S. 178.

In this case, the Court finds that granting Mr. Brown's motion for leave to file a fourth amended complaint would cause undue delay and prejudice. Mr. Brown is attempting to add new parties and bring entirely new claims in a case which has been pending since December 10, 2013. To allow Mr. Brown to begin this case once again at this stage of the proceedings would cause

undue delay and unfair prejudice to the existing defendants in that the addition of the new claims and defendants would require the existing defendants to expend additional resources to conduct additional discovery and would significantly delay the resolution of this dispute.  See, e.g., Cross v. MHM Corr. Servs., Inc., 2014 WL 346038, at *3 (E.D. Mo. Jan. 30, 2014) (denying motion for leave to file fourth amended complaint because, inter alia, "[t]o essentially start the case over, which has been pending for over two years and already has been amended several times would cause further delay and burden Defendants with additional responsive pleading and discovery requirements").  Conversely, denying Mr. Brown's motion would not be unduly prejudicial to him, given that he is free to pursue any valid claims in a separate action.  See id.  Consequently, the Court, in its discretion, will deny the amended motion for leave to file an amended complaint.  Further, Mr. Brown does not provide this Court with any basis upon which to grant an injunction or a stay.  For these reasons, the Court will deny Mr. Brown's amended motion in its entirety.  (Doc. 61).

### IV. Carlisle's Motion for Summary Judgment

The Court now turns to Carlisle's motion for summary judgment.  Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.  Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  "[I]f the evidence is insufficient to

reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted." Cox v. Kentucky Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995)(citation omitted). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion for summary judgment must be decided.

  On January 8, 2015, Carlisle filed a motion for summary judgment, arguing that this action is merely an improper attempt by the Browns to re-litigate the foreclosure action filed and decided against them in state court. More specifically, Carlisle argues, inter alia, that the claims against it are barred by the doctrine of res judicata because "many of the issues crucial to Plaintiff's [sic] claims against Carlisle are res judicata as determined by the November 12, 2014 final judgment rendered in case number 08-CVE-12-1598 (The State Foreclosure Action)." (Doc. 54 at 4).

12

There is both a federal law standard and a state law standard for issue preclusion, also known as collateral estoppel, and these standards share several common elements.  Under the federal standard, the party claiming preclusion must demonstrate:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Kosinski v. Commissioner of Internal Revenue, 541 F.3d 671, 675 (6th Cir. 2008), quoting United States v. Cinemark USA, Inc., 348 F.3d 569, 583 (6th Cir. 2003).  Similarly, issue preclusion under the Ohio standard applies if:

> 1) the fact or issue was actually litigated in the prior action; 2) the court actually determined the fact or issue in question; 3) the party against whom issue preclusion is asserted was a party, or in privity with a party, to the prior action.

Osborn v. Knights of Columbus, 401 F. Supp.2d 830, 832-33 (N.D. Ohio 2005).  The third element of issue preclusion under Ohio law is required only if "a party seeks to use issue preclusion offensively" in the litigation.  Id., citing Chambers v. Ohio Dep't of Human Services, 145 F.3d 793, 801 n.14 (6th Cir. 1998).

Under both standards, Carlisle is able to establish that issue preclusion bars Mr. Brown's claims against it in this case.  Mr. Brown's FDCPA claim (count one) raises issues as to whether Carlisle's clients were proper party plaintiffs, as opposed to debt collectors, and whether Carlisle made misleading representations with respect to the mortgage and note.  In his fraud claim (count two), Mr. Brown alleges that Carlisle fraudulently back-dated an assignment of the mortgage and note, and that it fraudulently brought the foreclosure action on behalf

13

of debt collectors. Mr. Brown's slander of title claim (count three) challenges the validity of the mortgage assignments. Finally, in his slander of credit claim (count four), Mr. Brown raises an issue concerning allegedly misleading and deceptive debt collection practices. As set forth by Carlisle, all of these issues were raised and resolved in the judgment decree and order of foreclosure issued by the Delaware County Court of Common Pleas on November 12, 2014.

In the judgment decree and order of foreclosure, the findings of the Court of Common Pleas included the following with respect to CitiGroup and Kondaur (collectively, "Carlisle's clients"):

- that Carlisle's clients provided clear and accurate disclosures and performed all of the conditions precedent required to be performed prior to the acceleration of the mortgage and initiation of foreclosure proceedings;

- that the accounting of the amount owed was accurate and the interest rate was proper;

- that the mortgage was assigned to CitiGroup on December 1, 2008 and officially recorded;

- that the mortgage was further assigned to Kondaur on November 9, 2009 and officially recorded;

- that a judgment of foreclosure against the Browns was warranted;

- that Carlisle's clients did not: breach the mortgage contract or any contract, commit fraud, violate federal laws or regulations with regard to the mortgage, engage in willful or wanton misconduct in their handling of the loan, misrepresent any material facts regarding the loan relationship, violate the Ohio Consumer Sales Practices Act, use inaccurate or misleading terms with regard to the loan, violate a fiduciary duty owed to the Browns, breach any contractual obligations of good faith, charge excessive forfeiture/penalty payments above market rates with

>            respect to the loan, engage in unfair methods of
>            commerce, or make any false representation orally
>            or in writing to the Browns.

See Joint Decree and Order of Foreclosure, Case No. 08 CV E 12 1598 (Nov. 12, 2014). The determination of those issues was necessary to resolve the judgment decree and order of foreclosure. If, for example, there been improper debt collection practices, fraud, or improper assignments, those issues necessarily would have impacted the state court's decision. Further, under Ohio law, the decree of foreclosure is a final judgment for res judicata purposes. See In re Hoff, 187 B.R. 190, 194 (S.D. Ohio 1995). Finally, Mr. Brown had a full and fair opportunity to litigate these issues in the Court of Common Pleas. Here, Carlisle does not need to demonstrate mutuality of parties in the prior litigation because it seeks to use issue preclusion defensively, rather than offensively. Based on the foregoing, the Court agrees that Mr. Brown's claims against Carlisle in the instant case are barred by res judicata.

    In his memorandum in opposition to Carlisle's motion for summary judgment, Mr. Brown argues against this conclusion. (Doc. 58). First, Mr. Brown appears to argue that res judicata does not bar his claims because he filed a timely appeal of the Court of Common Pleas decision. See 15 CAE 02 0014. Mr. Brown attaches a February 17, 2015 notice of appeal as an exhibit to his memorandum in opposition, which reflects that the Browns are appealing the judgment confirming the sale and distribution of sale proceeds issued on February 11, 2015. Id., Ex. A. Mr. Brown also states that "Res Judicata and Claim preclusion are not applicable to the FDCPA complaint because the Plaintiffs Brown have not previously litigated any federal law claims" against Carlisle. Id. at 4. Finally, Mr. Brown argues that "succeeding in or a final judgment of a foreclosure does not preclude

15

Plaintiffs from pursuing FDCPA complaints against a law firm." Id.

In reply, Carlisle argues that "the Browns have waived the right (by failure to timely appeal) the validity and findings of the Judgment Entry of Foreclosure and are instead appealing the Confirmation of Sale order and questioning whether the execution of that Judgment Entry of Foreclosure...." (Doc. 59 at 4). Carlisle argues that the judgment entry of foreclosure and confirmation of sale order "are separate and distinct actions, both of which constitute final appealable orders once entered." Id. Finally, Carlisle argues that no evidence has been offered in opposition to its motion for summary judgment. Thus, Carlisle urges this Court to grant judgment in its favor.

Irrespective of whether Mr. Brown waived his appeal of the judgment entry of foreclosure, "the fact of a pending appeal does not impact the res judicata effect of the judgment." Chandler v. Carroll, 2012 WL 252014, at *3 (D. Vt. Jan. 26, 2012), citing Chariot Plastics, Inc. v. United States, 28 F. Supp.2d 874, 881 (S.D.N.Y. 1998)(noting that "res judicata and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending") (citation omitted). As to Mr. Brown's claim that res judicata should not apply because Carlisle was counsel in the state court litigation, as opposed to a party, the Court finds that, as set forth above, mutuality of parties is required only if issue preclusion is being used offensively. Moreover, even if mutuality of parties were required, that element would be satisfied in this case. As the Court of Appeals has noted, "it is well settled that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship." ABS Indus., Inc. v. Fifth Third Bank, 2009 WL 1811915, at *5 (6th Cir. June 25, 2009); but see Charvat v.

16

GVN Michigan, Inc., 2010 WL 2706163, at *5 (Ohio Ct. App. 10th Dist. July 8, 2010)(stating that the cases cited in ABS Industries "suggest the rule that a principal-agent relationship satisfies privity for purposes of res judicata is fact-based and case-specific"). Because "the relationship between client and attorney . . . is a quintessential principal-agent relationship," CIR v. Banks, 543 U.S. 426, 436 (2005) (citations omitted), privity in the context of res judicata is satisfied in these circumstances. Further, although Carlisle was not a party to the state court litigation, the Court of Common Pleas made various rulings which determined that the actions taken by Carlisle on behalf of its clients were proper. In addition to the rulings set forth above, the Delaware Court of Common Pleas also found that Carlisle did not violate Rule 11 in that action. (Doc. 54, Ex. B). Because issue preclusion bars Mr. Brown's claims in this case, Carlisle is entitled to summary judgment. See, e.g., Byrd v. Homecomings Finan. Network, 407 F. Supp.2d 937, 944-45 (N.D. Ill. 2005)(finding FDCPA claim barred by res judicata where the allegations stem from the same group of facts determined by the state court foreclosure). In light of this Court's determination that Mr. Brown's claims against Carlisle in the instant case are barred by res judicata, the Court need not consider the additional arguments raised in Carlisle's motion for summary judgment. Carlisle's motion for summary judgment will be granted as to Mr. Brown's claims. (Doc. 54).

## V. Conclusion

 For the reasons set forth above, Carlisle's summary judgment is granted as to the claims brought by Mr. Brown only. (Doc. 54). Further, the motion for leave to file an amended complaint and injunction or motion to stay is denied as moot. (Doc. 60). Finally, to the extent that it is brought by Mr. Brown only, the amended motion for leave to file an amended complaint and

injunction or motion to stay is denied.  (Doc. 61).

/s/ Terence P. Kemp
United States Magistrate Judge